UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No: CR 08-00244 SBA |
| Plaintiff, | **ORDER** |
| vs. | Dkt. 100, 156, 173 |
| WILLIAM JOSEPH LITTLE, JR., and KEITH AARON VANN, | |
| Defendants. | |

Defendants William Joseph Little, Jr. ("Little") and Keith Aaron Vann ("Vann") are charged in an eleven count Indictment with: Conspiracy to commit mail and wire fraud, 18 U.S.C. § 1349; mail fraud, id. § 1341; wire fraud, id. § 1343; money laundering-promotion, id. § 1956(a)(1)(A)(i); and money laundering-expenditure, id. § 1957(a).

The parties are presently before the Court on Vann's pro se motion to dismiss, Dkt. 156, and Vann and Little's motions to sever, Dkt. 156, 173. Having read and considered the papers submitted and being fully informed, the Court DENIES all motions.

I. **BACKGROUND**

A. **FACTUAL SUMMARY**

Defendants Vann, Little and Joseph Lawrence Williams ("Williams")[1] allegedly engaged in a fraudulent scheme involving the creation of Global Missions Incorporated ("Global Missions"). Specifically, Defendants falsely represented that Global Missions was a non-profit organization and that donations to such organization would be recognized

---
[1] Defendant Williams, who was indicted with Vann and Little, died during the pendency of the action. Dkt. 107.

by the Internal Revenue Service ("IRS") as tax-deductible. In 2003, Defendants allegedly made a series of false statements to two siblings ("Victims") in order to convince them to donate a commercial building in Alaska left to them by their father's estate. The Victims transferred title of the building to Global Missions on June 2, 2003.

Thereafter, Global Missions sold the building and directed the First National Bank of Alaska to wire proceeds from the sale in the amount of $3,377,089.64 to Williams' bank account at Wells Fargo Bank in Dublin, California. Approximately one week later on June 10, 2003, Williams deposited $2,700,000 into a Wells Fargo account held in the name of Bishop of the Faith Vision Noble House ("Bishop of the Faith") for which Vann had sole signature authority. On June 17, 2003, Vann opened another Wells Fargo account in the name of Bishop of the Sovereign Knights of the Noble House ("Bishop of the Sovereign Knights") and transferred $2,000,000 from Bishop of the Faith account to the Bishop of the Sovereign Knights account.

Following the transfer of the building to Global Missions, the Victims learned that the IRS did not recognize Global Missions as a non-profit organization and were unable to obtain a charitable tax deduction for their donation. When the Victims requested the return of their donation from Defendants, they were contacted by mail, e-mail, and telephone by "James Preston," who was nothing more than fictitious persona created by Defendants to defend the retention of the Victims' donation.

### B. PROCEDURAL HISTORY

#### 1. The Indictment

On April 16, 2008, the Grand Jury returned an Indictment charging Defendants with the conspiracy to commit wire fraud, among other charges.[2] The conspiracy count contains overt acts committed by the Defendants in furtherance of the conspiracy. Vann's participation in the conspiracy includes the following charged acts: Accepting a check

---

[2] Little is charged with conspiracy to commit mail and wire fraud (count one) and wire fraud (count six). Vann is charged with conspiracy to commit mail and wire fraud (count one), wire fraud (count seven) and money laundering-expenditure (counts nine, ten and eleven).

written on the Global Missions Wells Fargo Bank account on June 10, 2003 in the amount of $2,700,000 from Williams, Indictment ¶ 4r; withdrawing $300,000 from the bank account the following day, id. ¶4s); thereafter withdrawing funds regularly from the account, id. ¶ 4t; opening a bank account on June 17, 2003 and transferring $2,000,000 into the new account, id. ¶ 4u, v; and, in November 2003, falsely representing himself to be James Preston when speaking to one of the Victims over the telephone, id. ¶4aa.

Little's role in the conspiracy as detailed in the Indictment includes the following: incorporating Global Missions on July 19, 2002, and naming Williams as the "Ambassador of Global" and himself as Williams' successor, id. ¶ 4a; on July 1, 2003, sending a letter bearing the signature block of "James Preston" through e-mail to Williams with a copy sent to Vann, id. ¶ 4w; in August 2003, speaking over the telephone to a victim about the return of the donated funds, id. ¶ 4z; and speaking to a victim in January 2004 again about the return of the donated funds, id. ¶ 4cc.

### 2. Prior Proceedings and Pending Motions

After the Indictment was filed in April 2008, the action was assigned to the Honorable D. Lowell Jensen. While Judge Jensen was presiding over the action, Vann's then counsel, Hugh Levine, filed a Motion for Severance and Separate Trial. Dkt. 100. Dkt. 142, 156.[3] Vann later filed two identical pro se motions styled as "Motion for Dismissal Charges; Reservation of My Rights UCC 1-308" on July 14, 2011 and on September 2, 2011. Dkt. 142, 156. Little also filed a Motion to Sever. Dkt. 103, 104. Judge Jensen did not rule on any of these motions. After the matter was reassigned to this Court, Little refiled his motion to sever, which he noticed for hearing on October 31, 2011. Dkt. 173. On October 28, 2011, the Court continued Little's motion to November 14, 2011

---

[3] Vann has changed attorneys numerous times. On May 19, 2008, the Court appointed attorney George Boisseau to represent Vann. Dkt. 13. On May 29, 2009, attorney Lydia Stiglich was substituted as Vann's court-appointed counsel in place of Mr. Boisseau. Dkt. 47. On March 26, 2010, attorney Hugh Levine replaced Ms. Stiglich. Dkt. 97. On January 28, 2011, Dustin Gordon, retained counsel, replaced Mr. Levine. Dkt. 133. On July 22, 2011, Judge Jensen granted Vann's request to represent himself, and appointed Warrington Parker III as stand-by counsel. Dkt. 152.

to be heard with Vann's pro se motion to dismiss. Dkt. 156. The Court now addresses these motions, as well as the motion to sever filed by Vann's previous counsel.

## II. DISCUSSION

### A. VANN'S MOTION FOR DISMISSAL

Vann has filed a two-page pro se motion to dismiss the Indictment. Dkt. 156. The basis of the motion is unclear.[4] Vann cites Uniform Commercial Code ("UCC") 1-308[5] and claims to "reserve" his rights thereunder "not to be compelled to perform under any contract or commercial agreement that [he] did not enter knowingly, voluntarily and intentionally." Dkt. 156 at 2. To the extent that Vann is claiming that he is shielded from criminal prosecution under the UCC, such an argument is without merit. See United States v. Sykes, 614 F.3d 303, 306 n.2 (7th Cir. 2010) (characterizing defendant's claim that the UCC relieved him of criminal liability as "bizarre"). In any event, the Indictment adequately alleges the elements of the offenses charged and "fairly informs" him of the charges against which he must defend, and otherwise "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." See United States v. Lazarenko, 564 F.3d 1026, 1033 (9th Cir. 2009) (internal quotation marks and citations omitted). The Court therefore DENIES Vann's motion to dismiss the Indictment.

### B. VANN AND LITTLE'S MOTIONS TO SEVER

The "general rule is that persons jointly indicted should be jointly tried." United States v. Smith, 893 F.2d 1573, 1581 (9th Cir. 1990); Fed. R. Crim. P. 8(b). There is a preference for joint trials of jointly indicted defendants because they promote judicial efficiency and consistency. Zafiro v. United States, 506 U.S. 534, 537 (1993). Where a

---

[4] On October 27, 2011, Vann filed a document styled as "Additional Documentation in Support of Appearance Brief in the Nature of Judicial Notice." Dkt. 174. This filing consists of various attachments—such as the "Mission Statement of In the Kingdom of the Power of Powers on the Soil in America"—the import of which is entirely unclear.

[5] UCC 1-308(a) states as follows: "A party that with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as 'without prejudice,' 'under protest,' or the like are sufficient."

conspiracy is charged, as in this case, a joint trial is "particularly appropriate." United States v. Freeman, 6 F.3d 586, 598 (9th Cir. 1993).  Under Rule 14, however, a court may sever a defendant for separate trial—but "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro, 506 U.S. at 539.

### 1. Antagonistic Defenses

Vann contends that his trial should be severed from Little's on the ground that their defenses are mutually antagonistic.  As a general matter, "[m]utually antagonistic defenses are not prejudicial per se," and do not automatically require severance.  Id. at 538-39.  Severance is not justified merely because both defendants proclaim their innocence and accuse the other of having committed the crime.  Id. at 539-40.  Rather, "[t]o be entitled to severance on the basis of mutually antagonistic defenses, a defendant must show that the core of the codefendant's defense is so irreconcilable with the core of his own defense that *the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant*."  United States v. Throckmorton, 87 F.3d 1069, 1072 (9th Cir. 1996) (emphasis added); United States v. Sherlock, 962 F.2d 1349, 1363 (9th Cir. 1989) (stating that the level of antagonism which must exist for a severance is that defenses are "irreconcilable and mutually exclusive").  This is a difficult standard to satisfy.  United States v. Vasquez-Velasco, 15 F.3d 833, 845 (9th Cir. 1994), overruled on other grounds by United States v. Jimenez-Ortega, 472 F.3d 1102, 1102-04 (9th Cir. 2007).

Here, Vann contends that *Little* will be prejudiced by a joint trial because, at trial, he (Vann) will attempt to inculpate Little and Williams as the masterminds behind the fraudulent scheme, while portraying himself as a person of "good moral character" who was uninvolved in their conspiracy.  Dkt. 100 at 5-11.  Setting aside the issue of whether Vann has standing to assert the alleged prejudice of another defendant as the basis for a severance request, the law is clear that severance is not justified merely because both defendants proclaim their innocence and accuse the other of having committed the crime.  See Zafiro, 506 U.S. at 539-40; United States v. Arias Villanueva, 998 F.2d 1491, 1507

(9th Cir. 1993) ("the desire of one to exculpate [herself] by inculpating the other does not generate the kind of prejudice that requires severance.") (internal quotation marks and citations omitted). Moreover, Vann has made no showing that his acquittal is dependent upon a guilty verdict against Little—or vice-versa. As such, the Court finds that severance is not warranted on the basis of antagonistic defenses.

### 2. **Bruton**

Next, both Vann and Little contend that a severance is necessary based on the Supreme Court's application of the Confrontation Clause in Bruton v. United States, 391 U.S. 123 (1968). See Dkt. 100 at 11-17; Dkt. 173 at 2-4. In Bruton, the Court "held that a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant." Richardson v. March, 481 U.S. 200, 210 (1987).

Little argues that Vann has made statements inculpating both of them, and, that in a joint trial, he will have no ability to cross-examine Vann regarding those statements should he exercise his right not to testify. Dkt. 173 at 2-3. Likewise, Vann complains that he may be prejudiced by an unspecified statement allegedly made by Little on November 13, 2007. Dkt. 100 at 11. However, the Government has indicated that it will redact any statement by Vann to avoid any reference to Little. Dkt. 105 at 9. As for statements by Little, the Government has represented that it will avoid eliciting any reference to Vann from any testifying witnesses. Id. This approach is sufficient to avoid the concerns articulated in Bruton. See Richardson, 481 U.S. at 211 ("the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence.").

### 3. **Spill-Over Effect**

Finally, Vann asserts that absent a severance, he will be prejudiced by the "spill-over" effect resulting from evidence that will be presented against Little as well as Little's

criminal history. Dkt. 100 at 4. "In assessing the prejudice to defendant from the 'spillover' of incriminating evidence, the primary consideration is whether the 'jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants, in view of its volume and limited admissibility of some of the evidence.'" United States v. Cuozzo, 962 F.2d 945, 950 (9th Cir. 1992) (quoting United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir. 1980)). Proper jury instructions are generally sufficient to minimize any prejudice from the spillover effect. Id. Thus, to obtain a severance, the defendant bears the burden of demonstrating that limiting instructions are "insufficient for the jury to compartmentalize the evidence against each defendant." See United States v. Candoli, 870 F.2d 496, 510 (9th Cir. 1989).

Here, Vann offers no argument why any prejudice resulting from evidence of Little's culpability cannot be accommodated by appropriate limiting instructions. He also has failed to make a "particularized" showing of prejudice that would likely result from a joint trial with Little. See United State v. Jenkins, 785 F.2d 1387, 1394 (9th Cir. 1986) (rejecting spillover claim where defendant made "no particularized showing of prejudice beyond an assertion, disputed by the government, that he was a minor player in the scheme").

In sum, the Court finds that Vann and Little have failed to make a sufficient showing of prejudice to warrant separate trials, and therefore, DENIES their respective motions for severance.

## III. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Vann's Motion for Dismissal is DENIED.

2. Vann's Motion for Severance and Separate Trial is DENIED.

3. Little's Motion to Sever is DENIED.

| | |
|---|---|
| 1 | 4. The motion hearing scheduled for November 14, 2011 at 1:00 p.m. is |
| 2 | VACATED. The parties shall instead appear before this Court for a status/trial setting |
| 3 | conference on **November 14, 2011 at 10:00 a.m.** |
| 4 | 5. This Order terminates Docket 100, 156 and 173. |
| 5 | IT IS SO ORDERED. |
| 6 | Dated: November 9, 2011 |

*Saundra B. Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT

- 8 -

| | |
|---|---|
| 1 | FOR THE<br>NORTHERN DISTRICT OF CALIFORNIA |
| 2 | |
| 3 | USA, |
| 4 |         Plaintiff, |
| 5 | v.<br>WILLIAM JOSEPH LITTLE, JR., |
| 6 | KEITH AARON VANN |
| 7 |         Defendant. |
| 8 |                                   / |

Case Number: CR08-00244 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 9, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Keith Aaron Vann
c/o 35 Shadow Mountain Street
Oakland, CA 94605

Dated: November 9, 2011

                                         Richard W. Wieking, Clerk

                                         By: LISA R CLARK, Deputy Clerk